IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| WEBSTER BANK, NATIONAL ASSOCIATION, | ) ) ) | |
| Plaintiff, | ) | FILED JULY 10, 2008 |
| v. | ) ) | 08 CV2494 JUDGE KENDALL |
| CORY CYBUL, | ) | MAGISTRATE JUDGE VALDEZ |
| Defendant. | ) ) | |

## ANSWER TO COMPLAINT

NOW COMES Defendant, Cory Cybul, by and through his attorneys, Roach, Johnston & Thut, and in answer to the Complaint filed by Plaintiff, Webster Bank, National Association, states as follows:

## JURISDICTION

1.  This Court has subject matter jurisdiction over this subject matter under 28 U.S.C. §1332 and 28 U.S.C. § 1348.   This is a civil action between citizens of different states.   The amount in controversy in this action exceeds $75,000.00 exclusive of costs and interest.

**ANSWER**:   Defendant admits the allegations in Paragraph 1.

2.  Venue is proper before this Court pursuant to 28 U.S.C. §391(a)(l) and (a)(3) because Defendant Cory Cybul ("Cybul") resides within the district and is subject to personal jurisdiction here.

**ANSWER:**   Defendant admits the allegations in Paragraph 2.

## THE PARTIES

3.  Plaintiff, Webster Bank, National Association ("Webster"), is a national banking association, chartered pursuant to 12 U.S.C. § 21, et seq.; its articles of association designate Waterbury, Connecticut as the locus of its main office.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 3.

4. Defendant Cybul is a resident of Lake County, Illinois and a citizen of the state of Illinois.

**ANSWER:**   Defendant admits the allegations contained in Paragraph 4.

## THE FACTS

5. On August 2, 2006, Cybul applied for a mortgage to be secured by property at Lot II   Stonegate Subdivision, Spring Grove IL, 60081  (the "Property").   In his application 08/02/2006 loan application "Application" attached hereto as Exhibit A), Cybul indicated that the property would be his primary residence.

**ANSWER:**   Defendant Cory Cybul denies the allegations in Paragraph 5 in that the application was prepared by a representative of the Plaintiff.

6. Webster relied on Cybul's statement in the Application that the construction property would be his primary residence in deciding to make a loan to Cybul.

**ANSWER:**   Defendant, Cory Cybul has insufficient knowledge to admit or deny the allegations in Paragraph 6 and therefore denies said allegations.

7. At the time Cybul signed the Application, he intended to build the house for resale, not as his primary residence.

**ANSWER:**   Defendant, Cory Cybul denies the allegations in Paragraph 7.

8. On August 23, 2006, Webster and Cybul entered into a loan agreement evidenced by a written promissory note. (08/23/06 promissory note "Note" attached hereto as Exhibit B).

**ANSWER:**   Defendant, Cory Cybul admits the allegations in Paragraph 8.

9. Under the terms of the Note, Webster agreed to loan Cybul the principal amount of $873,000.00 at a yearly interest rate of 8.375%.  Ex. B, Note, *| 2.  The

loan was for the purpose of construction of the Property and Webster funded the loan pursuant to the agreement.

    **ANSWER:**   Defendant admits the allegations in Paragraph 9.

10. Pursuant to the Note, on October 1, 2006, Cybul was to begin making monthly payments of $6,635.43. These payments were to continue until Cybul had "paid all of the principal and interest and any other charges described below that [Cybul] may owe under [the] Note." Ex. B, Note, ¶ 3.

    **ANSWER:**   Defendant admits the allegations in Paragraph 10.

11. The monthly payment amount was amended by the Construction Rider ("Rider"), attached herein as Exhibit C, which provided that until October 1, 2007, Cybul could make interest only payments. See Ex. C, Rider ¶ 4. The Rider also provided that as of October 1, 2007, Cybul would begin making payments of both principal and interest in the amount of $6,687.27. Ex. C. Rider, ¶ 4

    **ANSWER:**  Defendant admits the allegations in Paragraph 11.

12. The Note also contained a "Maturity Date" of September 1, 2036, on which Cybul agreed to pay in full any remaining amounts due under the Note. Ex. B, Note, ¶ 3.

    **ANSWER:**   Defendant admits the allegations in Paragraph 12.

13. Cybul began making the scheduled payments. However, Cybul has failed to continue making the scheduled payments.

    **ANSWER:**   Defendant admits the allegations in Paragraph 13.

14. The Note provides that if Webster "has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, [Cybul] will pay a late charge," of "5.000 % of [the] overdue payment of principal and interest." Ex. B, Note, ¶ 6(A).

    **ANSWER:**   Defendant admits the allegations in Paragraph 14.

15.    The Note provides that if a payment is not made on the date it is due, Cybul will be in default. Ex. B, Note, U 6(B).

**ANSWER:**    Defendant admits the allegations in Paragraph 15.

16.    Therefore, Cybul is currently in default.

**ANSWER:**    Defendant admits the allegations in Paragraph 16.

17.    On January 7, 2008, pursuant to the terms of the Note and related contracts, Webster sent Cybul a notice of default, the full amount of principal and interest is now due and payable. Ex. B, Note, 6(c).

**ANSWER:**    Defendant admits the allegations in Paragraph 17.

## COUNT ONE - Breach of Contract

18.    Plaintiff repeats and realleges the allegations contained in paragraphs 1 through17 above as if fully set forth herein.

**ANSWER:**    Defendant restates and realleges his answers to Paragraphs 1 through 17 of Plaintiff's Complaint as and for his answers to Paragraph 18 as though fully set forth herein.

19.    Webster offered to loan Cybul the sum of $873,000.00 on the terms described in the Note and related contracts.

**ANSWER:**    Defendant admits the allegations in Paragraph 19.

20.    Cybul accepted the terms of the Note and related contracts.

**ANSWER:**    Defendant admits the allegations in Paragraph 20.

21.    The consideration for the Note and related contracts consisted of Webster's payment of the principal and Cybul's agreement to repay the loan with interest.

**ANSWER:**    Defendant admits the allegations in Paragraph 21.

22.    The parties memorialized their agreement on August 23, 2006 by executing the Note, thus creating a valid and enforceable contract.

**ANSWER:** Defendant admits the allegations in Paragraph 22.

23. By funding the loan, Webster fully performed.

**ANSWER:** Defendant admits the allegations in Paragraph 23.

24. Cybul began performance by making monthly payments.

**ANSWER:** Defendant admits the allegations in Paragraph 24.

25. Cybul stopped making monthly payments, is now in default and thereby breached the contract.

**ANSWER:** Defendant admits the allegations in Paragraph 25.

26. Pursuant to the terms of the Note and related contracts, the entire sum of principal and interest is now due and payable.

**ANSWER:** Defendant admits the allegations in Paragraph 26.

27. The terms of the Note provide that Cybul agreed to pay any expenses Webster incurred in enforcing the provisions of the Note, including attorney's fees. Ex. B, Note, (E).

**ANSWER:** Defendant admits the allegations in Paragraph 27.

28. As of the date of filing, the amount of principal, interest, and expenses due on the Note exceeded $905,155.50.

**ANSWER:** Defendant admits the allegations in Paragraph 28.

## COUNT TWO - Fraud

29. Plaintiff repeats and realleges the allegations contained in paragraphs 1 through 28 above as if fully set forth herein.

**ANSWER:** Defendant restates and realleges his answers to Paragraphs 1 through 28 of Plaintiff's Complaint as and for his answer to Paragraph 29 as though fully set forth herein.

30. Cybul made a misstatement of fact when he indicated in the Application that the Proper be his primary residence (the "Statement").

**ANSWER:** Defendant denies the allegations in Paragraph 30.

31. At the time Cybul made the Statement, he knew it to be false as he intended to build the house for resale.

**ANSWER:** Defendant denies the allegations in Paragraph 31.

32. Cybul intended for Webster to rely on the Statement when making its determination regarding offer Cybul a loan.

**ANSWER:** Defendant denies the allegations in Paragraph 32.

33. Webster did rely on the Statement in deciding to offer to lend Cybul $873,000.00 under the terms described in the Note.

**ANSWER:** Defendant denies the allegations in Paragraph 33.

34. As a result of Webster's reliance on the Statement, Webster has suffered losses, which as of the date of filing exceeded $905,155.50.

**ANSWER:** Defendant denies the allegations in Paragraph 34.

WHEREFORE, Defendant, CORY CYBUL, respectfully requests this Honorable Court dismiss Plaintiff's Complaint and grant Defendant his costs.

                Respectfully submitted,

                Cory Cybul

        By:   s/C. Jeffrey Thut (electronically)
              His Attorney

C. Jeffrey Thut
Atty. No. 06188219
ROACH, JOHNSTON & THUT
516 N. Milwaukee Ave.
Libertyville, IL 60048
(847) 549-0600

7